## POOL et al. v. DUNNAM et al.

### No. 2568.

Court of Civil Appeals of Texas. Beaumont.

May 10, 1934.

V. A. Collins, of Livingston, for appellants.

Campbell, Murphy & Cochran, of Livingston, for appellees.

WALKER, Chief Justice.

This suit was brought by Dan Pool, Joe Pool, T. J. Pool, L. Pool, and Mrs. Lula Collins, joined by her husband, F. M. Collins, appellants, against S. E. Dunnam, Jr., and W. L. Pickens, appellees, to cancel a mineral lease, dated the 21st day of October, 1932, executed by appellants and their brother Dave Pool, to appellee, S. E. Dunnam, Jr. The lease covered 40 acres of land in Polk county. Its conditions and obligations are immaterial to the issues tried in the lower court. The theory of appellants' petition was that the lease was a severable contract, binding on each of them as and when executed; that appellee agreed with them severally to pay their respective interests within ten days after they signed it, that is, within ten days after each one of them signed it, he was to get his money; that this promise was fraudulently made, in that, at the time it was made, Dunnam did not intend to perform it, but intended fraudulently to tie up appellants' property and hold it without cost to him, to await subsequent oil development in that territory. The theory of appellees' answer was that the contract was entire and not severable; the testimony was that Dunnam paid the full consideration within ten days after Dave Pool, the last of the lessors to sign, had joined in its execution. Judgment was entered for appellees upon an instructed verdict, on the construction given by the court that the contract was entire and not severable.

Appellees make no answer to appellants' assignments that the evidence was sufficient to support the allegations of fraud, provided the contract was severable and not entire.

■■ The following propositions were relied upon by appellees to sustain the instructed verdict:

First. The language of the lease:

"Oil, Gas and Mineral Lease

"This agreement made this 21st day of October, 1932, between Dan Pool, Joe Pool, T. J. Pool, L. Pool, Mrs. Lula Collins and Husband F. M. Collins and Dave Pool lessor (whether one or more), and S. E. Dunnam, Jr., lessee, witnesseth:

"1. Lessor in consideration of Ten Dollars and other considerations Dollars ($10.00) in hand paid, of the royalties herein provided and of the agreements of lessee herein contained, hereby grants, leases and lets exclusively unto lessee for the purpose of investigating, exploring, prospecting, drilling and mining for and producing oil, gas and all other minerals, laying pipe lines, building tanks, power stations, telephone lines and other structures thereon to produce, save, take care of, treat, transport and own said products, and housing its employees the following described land in Polk County, Texas, to-wit" —imports an entire and not a severable contract. The quoted language does not compel the construction contended for by appellees. Parol testimony was admissible to ascertain the intent of the parties as to whether the lease contract was entire or severable; this follows because the true consideration and the manner of its payment were not stated in the lease. The consideration named in the lease was nominal only; the true consideration was $274.32, being $8 per acre to each of the appellants for his interest in the 40 acres.

■ Second. The consideration was to be paid by draft drawn by Dunnam upon himself, with no instructions to the bank in whose favor it was drawn to receive severable payments. The draft, with its indorsements, was as follows:

"The National Bank of Commerce of Houston
"No. ——

"Upon approval of title as per agreement attached

"Houston, Texas, Oct. 21, 1932

"First State Bank of Livingston Texas for credit

"Pay to the order of in equal shares to the endorsers herein $274.32 Two Hundred Seventy Four and 32/100 Dollars

"Value received and charge the same to account of with exchange To S. E. Dunnam, Jr., 1517 Esperson Bldg., Fairfax 1562 Houston, Texas, Care of First National Bank.

"S. E. Dunnam, Jr."

Stamped: "Paid—First State Bank, Livingston, Texas."

Indorsed: "Full consideration for an Oil Gas and Mineral Lease covering Pool 40 acre tract of land in the William Shadburn Survey in Polk County, Texas.

"T. F. Pool
"Dan Pool
"Joe Pool
"L. Pool
"Lula Collins
"Dave Pool"

The "agreement attached" to the draft was as follows:

"Contract and Agreement
"State of Texas, County of Polk

"Witnesseth this memorandum of agreement made and entered into this 21st day of October A. D. 1932 by and between Dan Pool, Louis Pool, Dave Pool, Joe Pool, Tom Pool and Mrs. Lula Collins joined by her husband Marion Collins, hereinafter referred to as Grantor (whether one or more), and S. E. Dunman, Jr. of Harris County Texas, hereinafter referred to as Grantee:

"For and in consideration of the sum of Two hundred seventy four & 32/100 ($274.32) as evidenced by a draft drawn on Grantee by Grantor through the First National Bank of Houston, Texas, and the further consideration of certain services rendered and money spent for the purpose of curing the title to the land hereinafter described, Grantor has this day executed to Grantee an Oil, Gas and Mineral Lease covering all their interest in a certain tract of Forty Acres (40) of land in the William Shadburn Survey in Polk County, Texas, more particularly described as follows:

"Beginning at the SE Cor. of a 320 acre tract on said survey and NE Cor. of Wm. Davis Survey; thence West with South line of said tract at 660 varas stake in small branch; thence North 342.1 varas stake in E. line of said 320 acre tract; thence East 660 varas to corner; thence South 342.1 varas to the place of beginning containing 40 acres of land and being the same land set aside to J. R. Pool in a Decree of the District Court of Polk County Texas recorded in Vol. H, Page 228 of the Civil Minutes of the District Court of Polk County Texas, which lease, together with a copy of this agreement and the draft hereinabove mentioned, shall be deposited in the First State Bank of Livingston, Texas.

"It is now agreed that a suit shall be filed in the District Court of Polk County Texas for the purpose of making a partition of said 40 acres of land; and as soon as possible after the final decree in this suit is handed down, Grantor shall furnish Grantee with an abstract covering the above described land and Grantee shall have ten days from the delivery of said abstract for his attorneys to examine the same, and if such abstract does not show a good and merchantable title in Grantor, said Grantor shall have ten days from the date of said Attorney's opinion within which to cure such objections to the title, as may be pointed out therein, and said Grantor shall make every effort to cure such objections.

"When said objections have been cured, Grantor shall resubmit the abstract and all curative matters to Grantee who shall have ten days thereafter within which to accept the title and pay to the above mentioned bank the sum of money aforesaid, upon which payment the bank shall deliver to Grantee the said lease.

"In case Grantor is unable to cure the objections pointed out by the said attorneys, and to furnish a good and merchantable title, he shall notify Grantee, who shall then have the right to waive the objections and accept the title or to reject the same. In case such title is rejected, such money as Grantee has expended to cure said title shall be forfeited and considered liquidated damages and all parties to this agreement shall be released from any further liability whatsoever and said bank shall return the lease to Grantor and shall return to the Grantee his draft. In case Grantee shall elect to waive examination of title or defects of title, the said bank is hereby instructed to deliver said lease to Grantee at any time upon the payment of the sum of money specified herein.

"In witness whereof, we sign this 22nd day of October 1932.

"Witnesses:

Dan Pool
"Joe Pool
"T. J. Pool
"L. Pool
"Lula Collins
"F. M. Collins
"Dave Pool
"Grantor
"S. E. Dunnam, Jr.
"Grantee"

Under all the evidence, First State Bank of Livingston was the agent of appellants to collect the consideration for the lease, and when the consideration was paid, to deliver the lease to Dunnam. The testimony of all of the appellants was to the effect that Dunnam promised them when they signed the lease that he would pay them within ten days; not within ten days after all of them had signed it, but each one was to get his money within ten days after he signed it. One of the appellants testified that nothing was written on the draft when he indorsed it. The testimony of all of the appellants was to the effect that they indorsed the draft merely because Dunnam asked them to. The testimony of one was that Dunnam said the draft would have nothing to do with the payment of the consideration, that each was to be paid within ten days after he signed it. Some of the appellants indorsed the draft without knowing what it was. One testified that he had never heard of the draft; while the indorsement was his signature, the draft must have been handed to him with the other papers. One testified he could neither read nor write; one testified that he could not read and he indorsed the draft on the statement by Dunnam that he would get his money within ten days. All of them testified that they executed the agreement attached to the draft without reading it, and with the statement from Dunnam that it was merely to authorize him to bring a partition suit against one of their brothers who had disappeared. The testimony of all of them was to the effect, on this issue, that they would not have signed the attached agreement had they known its contents, and that they would not have leased their land to Dunnam, except upon his promise to pay each of them within ten days after he signed it. No point is made by appellees that this testimony of appellants was inadmissible under their allegations of fraud.

■■ Third. Appellees, knowing the lease money had not been paid as per the contract pleaded by them, permitted it to remain in the bank, and permitted the bank, without notice from them that they had repudiated the lease contract, to receive payment of the draft and to deliver the lease to Dunnam.

On the 2d day of December, 1932, appellant filed with the county clerk of Polk county the following affidavit:

"State of Texas, County of Polk

"Before me the undersigned authority of this date personally appeared Marion Collins of Hardin County, Texas, known to me to be a credible person, who on his oath deposes and says as follows:

"That on or about the 22nd day of Oct. 1932, he his wife and her brothers and sister executed a lease on 40 acres of land in the Shadburn Survey in Polk County, Texas, said 40 acres being known as the J. R. Pool place, to one Dunman, for the sum of $8.00 per acre, and said Dunman agreed to place the money in the First State Bank of Livingston, in Ten days from the said lease; said lessee, Dunman has not paid for said lease, and has wholly failed to deposit said lease money in said Bank as he agreed to do, and affiant who is the husband of one of the heirs of J. R. Pool, speaking for the Pool Heirs states on oath that said Heirs have repudiated said lease and refuse to be bound thereby, and hereby give notice to the public that said Dunman has no interest in said lease, and that the grantors therein claim all right and title to same owned and held by them before the execution of said lease.

"Marion Collins

"Sworn to and subscribed before me this 2nd day of December, 1932. [Seal] Hilda Schulte Notary Public, Polk County, Tex."

The certificate of the clerk shows that this instrument was filed for record at 1:30 p. m. of that day. On this issue Mr. Collins, the man who made the affidavit, testified as follows:

"Q. What date did you sign this affidavit stating that you wouldn't be bound by the lease? A. I don't know exactly, I think it was December—about—I don't know.

"Mr. Cochran: Will it be all right to introduce this?

"Mr. Collins: Yes.

"Q. (By Mr. Cochran) Look that over and see if that is a copy of it? A. I can't read without my glasses.

"Q. On December 2nd it shows to have been signed. Mr. Collins will admit that.

Mr. Collins what time of day did you file this thing for record? A. 10:00 o'clock I think.

"Q. 10:00 o'clock in the morning? A. Yes sir.

"Q. Was anyone with you when you filed that instrument? A. Nobody but my wife."

The testimony of appellants was to the effect that they repudiated the lease several days before the affidavit was filed; had consulted an attorney, and had tried to locate Dunnam, even going to Houston for that purpose. On this issue Mr. Dunnam testified that he paid the draft in good faith and received the lease from the bank before noon of the 2d of December, and that he filed the lease for record on that date. The certificate of the clerk shows that the lease was filed at 2:25 p. m. on December 2d. He testified further that he drove from Houston to Livingston on that day and made a search of the deed records for adverse claims before paying the draft. A Mr. Moore testified that he met Mr. Dunnam in Livingston on that date about 4 p. m.; that Mr. Dunnam said to him: "I had a hard fight, I just drove from Dallas." The territory adjacent to the lease premises was being prospected for oil, but when the lease was executed, it was purely wildcat territory. An oil well came in in this territory a day or so before Dunnam paid the draft to the bank, and, notwithstanding the conditions of the agreement attached to the draft, and notwithstanding Dunnam's testimony to the effect that he paid it in good faith and did not know that the appellants were dissatisfied, he seems to have paid the draft immediately upon hearing of the oil well. Though the lease was in the bank, and though Dunnam had paid nothing for it, and before all the owners had joined in its execution, Dunnam filed a certified copy of the lease in the deed records of Polk county with the following affidavit attached thereto:

"State of Texas, County of Polk

"Before me the undersigned authority, on this day personally appeared S. E. Dunnam, Jr., who being duly sworn on his oath says: That the foregoing instrument is a true copy of an Oil, Gas, and Mineral Lease executed by Dan Pool, Joe Pool, T. J. Pool, L. Pool, and Mrs. Lula Collins and her husband F. M. Collins, each of whom acknowledged said instrument before a Notary Public in and for the respective counties in which they reside.

"S. E. Dunnam, Jr.

"Subscribed and sworn before me this 4th day of November, A. D. 1932 at Livingston, Texas. [Seal] Mrs. J. M. Hooks, Notary Public, in and for Polk County, Texas."

If the contract was as testified to by appellants—that the consideration was to be paid to each of them within ten days after each of them signed it, and that but for this promise they would not have signed the lease—then they owed Dunnam no duty to notify him that they had repudiated the lease, and would not deliver it to the bank upon payment of the consideration. The contract expired by its own terms when he failed to pay the consideration at the time agreed upon, provided the contract was as testified to by appellants. No issue of estoppel arose in favor of Dunnam that he was mislead to his injury, and caused to pay the money to the bank by any affirmative act of appellants. Before paying the draft, had he made the least inquiry, he would have ascertained the fact that appellants construed his failure to pay the consideration as a breach of the contract; and that they considered the contract at an end; and that they were not willing for him to have the lease.

Appellee Pickens was made a party defendant on the allegation that he was claiming an interest in the lease under an assignment from Dunnam. Pickens introduced in evidence an assignment of an interest in the lease from Dunnam, but, as against appellants' allegations of fraud, offered no proof of payment of a valuable consideration. The testimony on this issue was merely to the effect that Pickens paid a "valuable" consideration, which was a mere conclusion of the witness, and without probative force to sustain the assignment against the allegations of fraud.

As the trial court was in error in its construction of the contract, and as the testimony raised the issues of fraud pleaded by appellants, the instructed verdict was error.

It follows that the judgment of the lower court must be reversed and the cause remanded for a new trial, and it is accordingly so ordered.